O’Neall, J.-
delivered the opinion of the Court.
For the first time, oil the fourth argument in this case, the pleadings have been brought to our notice. As the case has been heretofore heard on the merits, without any question being raised about what was confessed or denied by the pleadings, it would have been as. well; that no such question should have been now raised. , For on looking into them, 1 am satisfied that no issue has been legally, and properly, made up between the parties on the point in controversy ; and that after having undergone a war of seven years, in Court, a repleader must be awarded. ■ •
The plaintiffs declare for. breaking and entering their close on the 21st of June; 1825, and taking therefrom, of the proper goods and chattels of the plaintiffs, three certain negro slaves, Jupiter, Saul and Anthony, and one black gelding. To this the defendants pleaded, 1st. the general issue, on which issue was joined, and 2nd. a special plea in justification, that on the 16th. of March, 1825, the defendant McNeill as the deputy sheriff, and the other defendants by his command, seized the said slaves and horse in execution under two fi. fa’s, issued from the Court of Common pleas, for Fairfield district, at the suit of William Hall and George Cotchett, and John Kirkpatrick, against Judith Jones. To this plea, the' plaintiffs replied by making a new assignment of the tresspasses, *87 in which they set out, that the trespasses in the plea mentioned, are not the same trespasses whereof they complain; and say, that true it is, that the said Judith Jones, at the time when the said M’Néill levied the said execution on the said slaves and gelding, had an estate in the said slaves and gelding under the will of her husband, Henry Jones, dec’d. determinable.on her death or marriage, whichever should first happen, which levy they aver, is not the trespass complained of: but they state, that on the 28th.of March, 1825, the said Judith intermarried with Samuel Barker, and that all the estate of the said Judith in the said slaves and gelding, then and there terminated, whereof the defendants had notice; and the plaintiffs aver that they afterwards, to wit, on the 21st of June, 1825, were lawfully possessed of the said slaves and .gelding, and that the defendants broke their close, and seized, took, drove and led away, the said slaves and gelding, and converted and disposed of them to their own use; which trespasses so new assigned are other and different trespasses than the said trespasses in the second plea mentioned, and conclude with a verification. To this novel assignment, which is a new declaration, the defendants should have pleaded generally or specially; instead of doing so, they rejoin traversing two facts, stated as part of the plaintiffs’s title, to wit,, that Judith Jones was married, and that- the plaintiffs had possession of the property as stated; they then aver thatit was in the possession of Judith Jones, and that they were not guilty of any trespass in taking it into their possession, and conclude to the country. The plaintiffs, instead of demurring, put in a similiter.
In 1 Chitty’s Pleadings 6 i3 — 14, it is said “ a new assignment being, as already observed, in the nature of a new declaration, and dismissing the 'previous pleadings form consideration, so far as respects the matter newly assigned, the defendant shou dplead'to it precisely as to a declaration, either by denying the matter newly "assigned by the plea of not guilty: or, by answering it by a special plea of matter of justification, and he may plead several pleas.” “ To the plea of pleas to the new as *88 signment the plaintiff should reply precisely as to pleas to a declaration.” From this authority it is clear that all the pleadings subsequent to the new assignment, are erroueous. A rejoinder is not a plea. nor can it be so regarded. The issue, which it makes up, is four-fold, vis: 1st, the marriage of Judith Jones, 2d, the possession of the plaintiffs, 3d, the possession of Judith Jones, and 4th, that the defendants were not guilty of the trespass. The only one of these various issues, which the rejoinder attempts to make, in which there is a semblance of propriety, is that of not guilty; all the others would be embraced in it, if properly pleaded, and it would have put the plaintiffs to the proof of every material allegation contained in their novel assignment. Its duplicity, even if it was a plea, and not a rejoinder, prevents any thing like an issue “ which must in general be single,” 1 Chitt. Plead. 577. “ But this single point may consist of several parts, if they be dependent and connected.” Several parts, however dependent and connected, cannot be set up as distinct defences on issues. In the case before us, the rejoinder sets them up as distinct grounds of defence; it is therefore bad in substance as well as form. For, it ought to have been a plea, and not a. rejoinder, and the defence set up by it, should have been single and not multifarious. As it is, it does not present any single point as an issue.
The plaintiffs, as well as the defendants, are in fault by putting in a similiter, and this, as well as the fact, that the case has been always treated as if the pleadings were regular, will prevent the consequences of mispleading being visited on the defendants alone. — ■ A repleader will be awarded, and the defendants will have leave to plead to the novel assignment. As I have, before hinted, the pleadings would not have been noticed by the Court, had the parties been silent on the subject: they may plead as loosely as they choose, so long as they will be content not to call on the Court for its judgment on some question arising out of them. But if they will raise a question, which *89 brings the pleadings to our notice, it is our duty to see that they are regular, and if they are not, to have them corrected.
Having premised this much, I shall proceed to consider such other questions, as to me appear to be important in this case. The first which I will notice, is that which arises out of the opinion expressed by the presiding judge, that the defendants’ plea in justification, had admitted that the plaintiffs had possession prior to the 16th of March, 1825. How this inference can be drawn from the plea, I am at a loss to conjecture. The plea justifie the trespass, by virtue of a levy of executions on the slaves and horse, on the 16th of March, as the property of Judith Jones. The necessary inference from this, would be that she then had the actual or constructive possession; and not that any other person had a prior possession. But the effect of the new assignment was, to dismiss the previous pleadings from consideration, as to the matter newly assigned. It confessed and admitted, both the truth of the plea, and that until the 28th of March, 1825, Mi’s. Jones had an estate for life or widowhood, which it alledged, then to be determined by her marriage, and that on the 21st of June following, the plaintiffs were lawfully possessed of the property.— If there is any value in a new assignment which is intended to make a general declaration more certain, it is, that the plaintiff so describes his cause of action in it, as to render it certain, to a certain intent in general. The proof in support of the ease must correspond with every material allegation contained in it, including time and place, neither of which are generally required to be proved as laid. Hence I conclude that every thing anterior to the 28th of March, is admitted by the plaintiffs’ novel assignment to be in favor of the defendants; and that it is from this time alone they commence their title.
This brings me to the consideration of the question, whether the plaintiffs, as bailees of Mrs. Jones, the executrix, are entitled to recover?
William Hall, at the sale made by the sheriff on *90 t&e first Monday in April,. 1825,. under and by virtue" of his previous levy of the 16th of March, purchased' the three slaves;, and soon after,, they went out of liis-possession,, and were found in the possession of the plaintiff,, Thos. Jones. Hall employed the defendant McNeill to get the negroes for him, he hired the other-defendants as his- assistants, and with them- took the negroes, out of the plaintiff’s possession and delivered them to Hall. So that the point for our judgement,, is whether the sale by the sheriff to Hall,, of the goods-of the testator for the debt of the executrix, is a good and legal alienation of them? If it is, then the plaintiffs as her bailees are not entitled to recover.
It is said generally in the former opinion delivered in this cause by myself, that the plaintiffs might be entitled to recover as the bailees of the executrix.— This is stating the- proposition more broadly than subsequent reflection- and investigation, satisfies me is right.- The-inference from it would be, that at common law, the bailees of the executrix, and consequently she herself,could avoid a sale of the testator’s goods, made by the-sheriff under execution for her own debt.The position laid down in most of our elementary works, that the goods of the testator cannot be taken in execution for the debts of his executor, certainly sustains what is said in the former opinion, and the necessary inference from it. But on looking into the matter more advisedly, I am satisfied that at common-law the sheriff’s sale would be good against the executrix and her bailees; and that if they can avoid it at. law, it must be under the act of 1824.
To correct therefore, the generality of the former opinion, I propose to consider the rights of the plaintiffs as bailees-of the executrix, 1st, at common law, and 2nd, under the act of 1824.
1 set out with the proposition, that the bailee of the executrix cannot recover, if she could not. It is true, eases of bailment coupled with an interest arising from the bailment, may exist, in which the bailee might recover, where the bailor could not. As where goods hired for a term- are seised in execution for the *91 Aeh't of the bailor, there he could not recover either in trespass or in case, for as to him the seizure is right-ful; but if the bailment of hiring was prior to the lodgment of the execution, then the bailee might re-cover, for the injury done to his right of possession for -a limited time.
In the case before us, the bailment is nothing more than a commitment of the trust which was, and is still, in the executrix, to the cestuique trusts to manage the property in her place . For the proof is, that she gave it up to them to be managed by them. This made them bailees to take care of the property for the •executrix. They stand therefore in her place, and if she could recover, so can they; if she could not, they cannot.
These preliminary remarks apply to the rights of the plaintiffs both at common law and under the act ■of 1824.
It may now be stated as a general common law proposition which is sustained by authority, that in a contest between two executions, one of which is for the debt of the testator, and the other for the proper debt of the executor, the creditor of the testator, though his execution might be junior to that against the executor for his. own debt, would be entitled to seize and sell the testator’s goods in satisfaction of his execution, and that this right would not be defeated by even a sale under the other. Farr and others v. Newman and another, 4 T. R. 621. Rut this proposition, limited as it is, and reasonable as it appears to be, met. with the dissent of one of the ablest Judges of the English Bench, Judge Buller; and every one who reads his opinion, (634) will be obliged to confess, that he, according to the principles of the common law, is correct, and that the other judges are wrong. As however, the proposition which I have stated has the sanction of a majority of the English judges, and has been considered as settled law, andas it conforms to what would, in such a case, be the decision in Equity, I am willing to recognize it as law in this State, and have therefore stated it as a proposi *92 tion not requiring either argument or illustration. It is however from the decision in Farr v. Newman, that the principle has crept into our elementary books, that at common law, the goods of the testator cannot be seized in execution for the debt of his executor.— This is a much broader statement of the principle than that ease warrants: it decides nothing beyond the proposition which 1 have already stated.
I propose now to shew both from reason and authority, that if the goods of the testator are seized in, and sold under execution, for the debt of the executor, that the executor, and consequently his general bailee, cannot, according to the principles of the common law, maintain trespass, trover or detinue, against the sheriff, or the purchaser at his sale. Upon the death of the testator, all his goods, chattels and credits, are vested in his executor; and if he has the actual possession, they are so absolutely vested in him, that he may maintain trespass or trover, against any one, who may take them out of his possession, without even styling himself executor. Indeed it would be error to sue in such a case, as executor. The entire legal estate or the right of property and possession, is in the executor, and before the act of 1824, he could sell the goods of his testator, without any order from the Ordinary; and his sale would be good, even against a specific legatee. A sale by the sheriff for the executor’s debt is exactly equivalent to a sale made by himself; for, the sheriff is regarded as his agent, as well as that of the creditor, for making the sale and satisfying the debt. The sheriff is the debtor’s bailee for these purposes; and by his levy acquires all his right to the property, subject to the condition, that it is to be divested on the debt being satisfied by the debt- or. The legal estate in his testator’s goods being in the executor, it follows that in legal contemplation they are his proper goods and chattels, and therefore liable to seizure and sale under an execution against him. We have no right at law, according to the principles of the common law, when the executor is the claimant and his creditor, or the ■ sheriff, is the defendant, to *93 look to the trust purposes for which this legal estate is given to him; this belongs to equity, in order to pro tect the cestuique trusts. We know him at law as the legal owner, and when he complains that goods which the law vests in him have been seized in execution, under a lawful execution, to pay his own debt, how can a Court of law (unless it be under the act of 1824) say to him, you are entitled to recover ? To do so, on common law principles, would be transforming a law Court into a Court of Equity; and the executor into the cestuique trust.
The first case which I shall notice, is the case of Whale v. Booth, reported note (a.) 4 T. R. 625. In that case the plaintiff Was a creditor of the testator, and had obtained judgment and sued out execution against the executors ; they were indebted to their uncle, and confessed judgment for £800, and under the execution issued m his favor, the testator’s goods in the possession of the executors, as well as then-own, were seized and sold by the sheriff before the plaintiff’s execution was lodged. The uncle knew the goods levied upon, were the goods of the testator.— The sheriff returned the plaintiff’s execution nulla bo-na; and for the alledged false return, the action was brought. The Court held thát the sale of the goods by the sheriff for the debt of the executor, was a good alienation of them, and that therefore the return was not false.
This case may be. considered as overruled by the case of Farr v. Newman, so far as the precise point involved in it, is concerned; it is however valuable to shew that the case of Farr v. Newman, was itself an innovation on the common law, and that it ought not to carry us beyond the very point decided.
Farr and others v. Newman and another 4 T. R. 621, was an action on the case against the sheriff of Middlesex for a false return. The goods of the testator had been seized as the goods of the husband of the executrix, under an execution against him for his own debt; the plaintiff was a creditor of the testator, and had recovered judgment and sued out execution *94 a&amfd the executor and executrix ; but his exeeittion was not delivered to the sheriff to be levied, until after he had levied the execution for the debt of the husband of the executrix. The goods were in the possesion of the executrix before her marriage, and after her marriage, in the possession of her husband. The sheriff returned the executiorf nulla bona, and the question was, as against a creditor of the testator, whether his goods could be taken for the debt of the executor, and it was held by Grose, Ashhurst and Lord Kenyon, against the opinion of Buller, that the creditor of the testator, notwithstanding the levy of the execution against the executor, was entitled to the goods under his execution, and therefore the plaintiff had judgment. I have already had occasion to say that the law of that case was with Mr. Justice Buller, and I must now add that the equity of it was with the other judges. It will appear, upon reading the case, that a majority of the judges, however, concurred with Buller, that the executor himself, could not have disputed the levy of the execution for his own debt, on his testator’s goods, and this is all which is necessary for the point now under consideration. — ■ At page 637 Buller remarks that “ at law there is no such thing as a fund in the hands of an executor being the debtor'; but the person of the executor, in respect of the assets which he has in his hands, is the debtor.” — ■ This I apprehend, is clear law; and that therefore usually the creditor’s remedy, if the executor does not produce assets enough to pay the debt, is against him for a devastavit. The idea therefore of a creditor having the right to follow his testator’s goods, notwithstanding an alienation by the executor’s own act, or by operation of law, is contrary to the course of the common law. At page 639, he says “If goods be taken out of the hands of the executor, he must bring tresspass, as for his own goods.” How can it be that the sheriff cannot therefore justify a seizure of the testator’s goods under an execution against the executor in a suit brought by him (as it must be) in his own right ? It is obvious that the justification would *95 be good at common law; at page 641, lie cites the cases of Hoyle v. Lundon, and Worden’s case. In the latter it was held that “ execution against the goods of the exec at or for debt, injure proprio, is a devastavit, no-lens volensP The general result of his examination of the case was that the goods of the testator, in the hands of the executor, were at law his proper goods, and liable to execution for his own debt. Ashhhurt J. although he differed from Buller J., as to the case, admits fully, that as between the executor and the sheriff, the former could not dispute the levy; at page 645, he says “but it may be said, that as the executor has the legal property in these goods, and the sheriff' has an execution against his goods, the sheriff is bound to take them if he can find no other. In answer to this, I say that as between the sheriff and the party, the sheriff will certainly not be a trespasser by the taking.” At page 647, Lord Kenyon speaking of an execution against the executor, says “ when that writ came to the sheriff, if no claim liad been made by any other person, if there had been no evidence to induce the sheriff to believe that the goods seized were the property of the testator unadministered; if there had been no competition between the respective creditors who had ^he superior claim, the goods taken must have been considered as the property of ■him in whose hands they were found. They would have been treated as his own originally, or as having become so by payment of all the debts of the testator.” It is plain from these extracts, that if the contest had been between the executor and the sheriff as to his levy and sale, that the judgment would have been for the defendant. The case of Farr v. Newman was decided in 1792 ; in 1798 the case of Quick v. Staines, 1 Bos. & Pul. 293, was decided. It has in some respects a very close analogy to the case under consideration. M’Pherson the testator died about 9 months before the action was brought, having made his widow executrix, who was in possession of his goods for about three months, and treated them as her own, and then married Quick. After her marriage the goods were in her *96 husband’s possession, and were treated both by her and him as his own. The defendant seized the goods in execution for Quick’s debt; notice was given that they were the unadministered goods of M’Pherson. The action was trover by husband and wife in her right as executrix. Ch. J. Eyre, non-suited the plaintiffs on the ground that the executrix had committed a devastavit in placing the goods of M’Pherson in the hands of her second husband; and on a motion to set aside the non suit, the decision was confirmed by the whole Court. It is true that the case does not decide the very point under consideration, but it shews that the use of the goods by the executrix as her own, and permitting them to go into the possession of her second husband, was such a conversion as made them liable for his debts., This was saying, in other words, that as the legal estate was in her, he had jure mariti, reduced the goods into his possession ; and thus made them, at law, his own goods, and that he and his wife were chargeable for the; devastavit.
Acts
From these cases, as well as from the general reasoning, I deduce the conclusion, that, at common law, an executor or his general bailee, could not avoid a levy on, and sale of, the testator’s goods, under an execution for the executor’s own debt: and, that therefore, by common law principles, the bailees of the executrix could not recover.
But the sale, under which the defendants’ principal claims, was made after the act of 1824; and this makes it necessary, that we should consider the rights of the plaintiffs, under it. The 6th section of the “Act for the amendment of the law, in divers par-therein mentioned,” provides, “that, on all sales of personal property, hereafter to be made by the executors and administrators, they shall first obtain an order from the Court of Ordinary or the Court of Equity; and no sale hereafter made, without such order, shall he valid in law or equity, except it be directed by the ivilir The words of this act are too clear to be misunderstood: all sales, made by an administrator, must, to be valid at law or equity, be made under *97 ¡an order of the Ordinary, or of the Court of .Equity. The same is required to legalize the sale of an executor, unless it be directed by the will.— In either of the cases provided for by the act, the sale of an executor or administrator, Without an order from the Ordinary, or the Court of Equity, would be absolutely void; and an action would lie in the name, and at the instance of either, to recover it back; and in such case, if there had been a general bailment of the goods, the bailee might recover. If the executor’s or administrator’s own sale, in these cases, would be void, it follows that the sale of the testator’s or intestate’s goods, by the sheriff, under execution, for the debt of the executor or administrator, would be also void ; and the same right to recover back the property, would attach, as in the case of a voluntary sale. - In such a case,, either the executor or administrator, or the bailee of either, might maintain trespass for the levy. For the act compels a Court of law, to regard the property, not as absolutely the property of the executor or administrator, unless the will directs it to be' sold. In which case, the act leaves the property, as it was at common law. The will, in the case under consideration, directs the testator’s whole estate, real and personal, to be sold on the death or marriage of his widow. His widow', Judith, was the executrix; and, on her marriage, a sale by her and her husband, Would have been good, without any order from the Court of Ordinary, or the Court of Equity. The sale of personal property, under an execution against her, was the same as if the sale had been made by her and her husband: for, the debt, by marriage, became the debt of the husband as well as the wife, and a sale under the execution to satisfy it, must be regarded as the act of both. I am,therefore satisfied that neither the executrix, nor her general bailees, can avoid the sale to Hall, of the testator’s goods under an execution for the proper debt of the executrix. There can be no hardship in this application of strict legal rules to such a case as this ; the executrix is the mother of the *98 plaintiffs, and out of her shares of her deceased ehií--drens’ estate, she can and ought to account, to the plaintiffs, her cestwique trusts, for any injury which they may sustain, by eompellingherto pay a debt, which she justly owes out of her testator’s goods. If the plaintiffs, had been vigilant of their rights, and had believed that they might be injured by the sale under Hall’s executions, their remedy was a plain one in Equity. That Court can not only look to the trust purposes for which the legal estate is given to the executor, but will also see that they are execu-led faithfully. There can be no doubt that that Court would have enjoined the sale for the debt of the executrix ; and it may be, that it may decree Hall to be a trustee by virtue of his purchase.— Fori see that he purchased with notice of the provisions of the will. But be this as it may in another Court and on another occasion, I am now sitting as a law judge, and according to the rules of law, no matter what may be my opinion of the equitable rights of the parties, I am bound to say that the plaintiffs, as the bailees of the executrix, are not Entitled to recover. , ' ’
Independent however, of this conclhsive objection to their recovery, I think there is another equally conclusive, arising out of the proof as applied to the plaintiffs’ allegations contained in their novel assignment. The bailment by Mrs. Jones, if that which was intended to be a surrender of her estate during life or widowhood, can be considered as a bailment by her as executrix, was anterior to her marriage in March 1825. This very clearly cannot be set up to avoid the title of the sheriff to the purchaser, under a levy which was made on the 16th of March 1825, and which the new assignment admits to have been rightful, as the estate was then in her. On a just construction of the novel assignment I am satisfied that the plaintiffs make the marriage of Judith Jones the predicate of their title to recover ; they admit the title to be in her until then, which her marriage, as they suppose, then ended; that their right in remainder, then commenced. *99 and after it, that they were lawfully possessed of the said slaves and horse. The first opinion in this case delivered by Judge Nott, decided that the marriage of Mrs. Jones did' not end her legal estate in the proper-iy, that the legal title remained in her as executrix, and that she could not surrender it, unless her cesiuique trusts were of full age and accepted. If the plaintiffs under that decision, had adhered to the case made by the novel assignment, there never could have been any difficulty. As cesiuique trusts in possession, they might have recovered, against a mere trespasser, their shares of the value of the property and hire, or interest ; but as bailees of the executrix, under the allegations of their novel assignment, and the proof adduced in support of them, they cannot recover.
Here another question, totally distinct from that which I have been considering, presents itself; can the plaintiffs as cesiuique trusts in possession, recover against the defendants, the agents of William Hall, who was the purchaser of the legal estate of Judith Jones the executrix ? Generally there is no doubt that a cesiuique trust in possession may maintain trespass against every one exuepf his trustee, 1 Chitt. PI. 46. Cases may occur, where the trust in personal property is created by deed and executed by a delivery of possession, that the cesiuique trust in possession, might sue his trustee at law, for an injury done to his possession. For in such a case, he would have both the legal and equitable estate. But where the trust is entirely executory, or where the cesiuique trust, as in the case before üs, has no interést in the property itself, and is only entitled to a share of the proceeds when sold, generally he could not, at law, maintain an action against his trustee for an injury done to his actual possession. There may be exceptions, as where the trustee has sold to him a part of' the property, or put him in possession of it as an equivalent for his share of the proceeds. In the case under consideration, I cannot discover" any thing which would have enabled the plaintiffs to have maintained trespass against the executrix'Judith Jones, if she had taken the *100 property out of their possession. The purchaser of* her legal estate must stand in her place ; and 1 am therefore satisfied that the plaintiffs cannot recover in any yiew of the case : and were the pleadings properly made up, I should think it was our duty to order a non suit, in order to end this protracted litigation. , As it is, a new trial must be granted; and all the pleadings after the novel assignment mast be struck out, and the defendants and the plaintiffs must plead to it de novo; and it is accordingly so ordered.